AUSA: QAIS GHAFARY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 1625

UNITED STATES OF AMERICA

v.

HENRY LEONG,

Defendant.

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 1349, 641, 1028A, 2

COUNTY OF OFFENSE: WESTCHESTER

SOUTHERN DISTRICT OF NEW YORK, ss.:

THOMAS KOVACS, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
**(Conspiracy to Commit Wire Fraud)**

1. From at least in or about December 2023 up to and including at least in or about January 2024, in the Southern District of New York and elsewhere, HENRY LEONG, the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2. It was a part and an object of the conspiracy that HENRY LEONG, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, LEONG engaged in a scheme together with others to obtain tax refund money issued for the benefit of unwitting victims based on false tax filings, including by using and causing the use of interstate wire transfers to and from bank accounts in Westchester, New York, and by placing and sending interstate telephone calls and text messages to Westchester, New York.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
**(Theft of Government Funds)**

3. From at least in or about December 2023 up to and including at least in or about January 2024, in the Southern District of New York and elsewhere, HENRY LEONG, the defendant, did embezzle, steal, purloin, and knowingly convert to their use and the use of others, vouchers, money, and things of value of the United States and a department and agency thereof,

to wit, the United States Department of Treasury, which exceeded the sum of $1,000, and did receive, conceal, and retain the same with intent to convert it to their use and gain, knowing it to have been embezzled, stolen, purloined and converted, to wit, LEONG stole and converted to his use and gain funds from tax refund checks that the United States Department of Treasury issued for the benefit of unwitting victims.

(Title 18, United States Code, Sections 641 and 2.)

**COUNT THREE**
**(Aggravated Identity Theft)**

4. From at least in or about December 2023 up to and including at least in or about January 2024, in the Southern District of New York and elsewhere, HENRY LEONG, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, LEONG transferred, possessed, and used the names, addresses, and forged signatures of multiple unwitting victims in connection with the offenses charged in Counts One and Two of this Complaint.

(Title 18, United States Code, Sections 1028A and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5. I am a Special Agent with the FBI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

**Overview of the Fraudulent Conduct**

6. As detailed below, HENRY LEONG, the defendant, engaged in a tax refund check fraud scheme whereby LEONG used the stolen identities of unwitting victims to obtain tax refund money on the basis of fraudulent tax filings.

7. Specifically, HENRY LEONG, the defendant, conspired with others to use the identities of unwitting victims to apply for and obtain U.S. Treasury Department-issued tax refund checks in the names of those victims. LEONG then caused, and attempted to cause, a particular attorney ("Attorney-1") located in Westchester, New York, to deposit the tax refund checks into Attorney-1's escrow bank account (the "Attorney-1 IOLTA Account"), which was opened at a bank branch located in Westchester, New York.

8. HENRY LEONG, the defendant, made various false representations to Attorney-1 in order to induce Attorney-1 to assist him. For example, LEONG represented to Attorney-1, in

sum and substance, that the beneficiaries of the tax refund checks (the "Beneficiaries") were clients or associates of LEONG, who, for personal reasons could not deposit the checks into their own accounts, and thus needed Attorney-1's services to hold the funds from the checks in escrow and subsequently release the tax refund money to accounts designated by the Beneficiaries. LEONG also represented that the Beneficiaries were willing to pay LEONG and Attorney-1 a fee for their services. In support of this and similar misrepresentations, LEONG provided Attorney-1 with fraudulent documents, including fraudulent identification documents purportedly belonging to the Beneficiaries and fraudulent authorization letters purportedly signed by the Beneficiaries. LEONG also facilitated multiple telephone conversations between Attorney-1 and an individual pretending to be a particular Beneficiary, the purpose of which calls were to confirm LEONG's representations concerning the Beneficiary. At LEONG's instruction, Attorney-1 took possession of and subsequently transferred funds from the Attorney-1 IOLTA Account into particular accounts that LEONG owned or controlled.

9. In fact, the Beneficiaries were unwitting victims who did not know HENRY LEONG, the defendant. The Beneficiaries never applied for, received, or otherwise became aware that they had been issued the tax refund checks that LEONG possessed. The Beneficiaries never authorized LEONG to use their identities or to control any funds belonging to them.

**Use of Victim-1 and Victim-2 Identities in Fraud Scheme**

10. Based on my review of records from two particular financial institutions ("Bank-1" and "Bank-2," respectively) my review of records from an Internal Revenue Service database, my review of records from a particular telephone service provider (the "Telephone-1 Provider"), my interview of Attorney-1, my review of documents provided by Attorney-1, my interview of a Certified Public Accountant retained by a particular husband and wife (individually, "Victim-1" and "Victim-2"), my participation in this investigation, and my discussion with other law enforcement officers, I have learned the following, in substance and in part:

a. On September 12, 2023, a Form 1040 personal income tax return for tax year 2022 was jointly filed in the name of Victim-1 and Victim-2("Tax Filing-1").

b. Tax Filing-1 identified Victim-1 and Victim-2's home address as a particular address in Virginia ("Address-1"). Tax Filing-1 did not identify any tax preparer who was involved in the preparation of Tax Filing-1.

c. Tax Filing-1 was filed through the Internal Revenue Service ("IRS")'s online portal using a particular internet protocol address ("IP-1"). An actor or actors using IP-1 also filed at least six other Form 1040 personal income tax returns in the year 2023 on behalf of other individuals.

d. Based on Tax Filing-1, on or about December 1, 2023, the U.S. Department of Treasury issued a tax refund check in the amount of $628,880 to Victim-1 and Victim-2 ("Treasury Check-1") and mailed Treasury Check-1 to Address-1.

e. HENRY LEONG, the defendant, communicated with Attorney-1 using, among other means, a particular telephone number ("Telephone-1"). According to the Telephone-1 Provider records, Telephone-1 is registered to LEONG and one of LEONG's

companies at a particular address in Chicago, Illinois ("LEONG's Address"), where LEONG previously resided.

f. On or about December 5, 2023, LEONG, using Telephone-1, communicated to Attorney-1, including by text message, in substance and in part, that Victim-1 and Victim-2 were clients or associates of LEONG, that LEONG had possession of Treasury Check-1, and that Victim-1 and Victim-2 wanted Attorney-1 to "clear" the check by depositing it in Attorney's IOLTA Account. LEONG further asked Attorney-1 to deposit Treasury Check-1 into Attorney-1's IOLTA Account after Victim-1 and Victim-2 signed and endorsed Treasury Check-1 to Attorney-1. LEONG stated that he and Attorney-1 would be able to keep 10% of the face value of Treasury Check-1 as a fee for providing this purported service. Attorney-1 confirmed to LEONG that he could take these steps and provided LEONG with mailing instructions to send Treasury Check-1 to Attorney-1. LEONG responded in a text message that he would "send the endorsed check and tracking shortly."

g. On or about December 8, 2023, Attorney-1 received a package by mail that contained (i) Treasury Check-1, which bore a handwritten, purported endorsement from Victim-1 and Victim-2 to Attorney-1's IOLTA Account; (ii) copies of drivers licenses purportedly belonging to Victim-1 and Victim-2 ("Victim-1 False ID" and "Victim-2 False ID," respectively); and (iii) an authorization letter purportedly from Victim-1 and Victim-2 ("Letter-1").

h. Letter-1 was printed on a particular style of letterhead with partial blue and yellow edges. Letter-1 reflected purported contact information for Victim-1 and Victim-2, including a particular telephone number ("Victim-1 Telephone"). Letter-1 authorized Attorney-1 to represent Victim-1 and Victim-2 as their escrow attorney, to "clear" Treasury Check-1 through Attorney-1's IOLTA Account, and to await further instruction regarding the funds. Letter-1 bore signatures purporting to be Victim-1's and Victim-2's. Letter-1 also bore a purported notarization stamp, signature, and seal of a particular notary based in Georgia ("Notary-1").

i. On or about December 8, 2023, Attorney-1 attempted to contact Victim-1 at Victim-1 Telephone. The same day, LEONG, using Telephone-1, texted Attorney-1, writing, in substance and in part, "[Victim-1] said you called him, he already signed the letter. Not sure why you still need to talk to him" and that "[h]e [*i.e.*, Victim-1] just want[s] to deal with me as he does not know you. I can have him call you." LEONG subsequently texted Attorney-1 saying that "[Victim-1] will call and email you," and inquiring whether Attorney-1 had executed the wire transfer and deposits that LEONG instructed. Thereafter, an individual using Victim-1 Telephone and holding himself out to be Victim-1 returned Attorney-1's call. Attorney-1 and the individual purporting to be Victim-1 using Victim-1 Telephone subsequently spoke by telephone multiple times between approximately December 8, 2023, and December 13, 2023. The individual purporting to be Victim-1 and using Victim-1 Telephone in substance and in part confirmed to Attorney-1 the authorization reflected in Letter-1.

j. On December 13, 2023, Attorney-1 deposited Treasury Check-1 into Attorney-1's IOLTA Account, as instructed by LEONG.

k. On or about December 13, 2023, an individual purporting to be Victim-1 and using an email address incorporating Victim-1's name engaged in email correspondences

with Attorney-1, including to authorize Attorney-1 to send the funds to LEONG and to provide information for an account belonging to LEONG. The individual purporting to be Victim-1 provided account details for an Illinois-based business bank account for "Satoshi Holdings Co." ("Bank Account-1") held at Bank-1.

l. On or about December 16, 2023, LEONG, using Telephone-1, texted Attorney-1 the telephone number for a family member of LEONG ("Relative-1") and said, "Please Zelle her $2k. Thank you." Based on my training and experience and my participation in this investigation, I know that Zelle is a digital payment service used to electronically transfer money between accounts, and I believe that, in this instance, LEONG was asking Attorney-1 to transfer $2,000 to Relative-1 via Zelle. Three days later, LEONG texted Attorney-1, "[Relative-1] got your $2k. She is happy now. Thanks[.]" Attorney-1 understood this payment to be part of LEONG's "fee" for facilitating the Treasury Check-1 transaction.

m. On or about December 19, 2023, LEONG, using Telephone-1, texted Attorney-1 payment information for Bank Account-1 and said, "please wire funds to this account today per instructions minus your fees."

n. On or about December 19, 2023, at LEONG's direction, Attorney-1 executed a wire transfer in the amount of $254,819 from the Attorney-1 IOLTA Account to Bank Account-1 and confirmed the same with LEONG.

o. On or about December 19, 2023, at LEONG's direction, Attorney-1 executed a wire transfer in the amount of $150,000 from the Attorney-1 IOLTA Account to a particular Utah-based business bank account for "Solar Quantum Technology, Inc." ("Solar") ("Bank Account-2") held at Bank-2.

p. On or about December 22, 2023, LEONG texted Attorney-1, "Please wire $250K today and I will have them FedEx the check later today", to which Attorney-1 responded, "I can not do more than 100k remotely." On or about December 22, 2023, at LEONG's direction, Attorney-1 executed a wire transfer in the amount of $98,900 from the Attorney-1 IOLTA Account to Bank Account-1.

11. Based on my review of records from a Pennsylvania motor vehicle records database (the "PA DMV Database"), my interview of Victim-1 and Victim-2, my training and experience, and my participation in this investigation, I have learned the following in substance and in part:

a. Victim-1's photograph in the PA DMV Database does not resemble Victim-1's purported photograph in the Victim-1 False ID that HENRY LEONG, the defendant, mailed to Attorney-1.

b. Victim-2's photograph in the PA DMV Database does not resemble Victim-2's purported photograph in the Victim-2 False ID that LEONG mailed to Attorney-1.

c. Victim-1 and Victim-2 did not submit, or authorize anyone else to submit, Tax Filing-1. Victim-1 and Victim-2 did not request or receive Treasury Check-1 and were not otherwise aware of the issuance of Treasury Check-1 by the IRS. Victim-1 and Victim-2 are not familiar with Address-1, to which Treasury Check-1 was mailed. Victim-1 and Victim-2 are not

familiar with Victim-1 Telephone, from which an individual held himself out to be Victim-1 in telephone calls with Attorney-1. Victim-1 and Victim-2 are not familiar with LEONG, have never knowingly communicated with LEONG, and never authorized LEONG or anyone else to take receipt of Treasury Check-1 or to otherwise control Treasury Check-1 funds.

12. Based on my review of records from Bank-1 and Bank-2, my review of public records produced by the Illinois Secretary of State and the Utah Secretary of State, my training and experience, and my participation in this investigation, I have learned the following in substance and in part:

a. Satoshi Holding Co. ("Satoshi") is an Illinois-incorporated company. A particular individual believed to be the spouse of HENRY LEONG, the defendant, ("LEONG's Spouse") is the President and Principal/Owner of Satoshi. LEONG serves as a registered agent for Satoshi. Satoshi is registered to the LEONG's Address.

b. Moreover, Bank Account-1 is held in the name of Satoshi. LEONG's Spouse is the account signatory for Bank Account-1. One of the addresses on file for Bank Account-1 is LEONG's Address.

c. As set forth above, on or about December 19, 2023, Attorney-1 transferred $254,819 from Attorney-1's IOLTA Account to Bank Account-1, per LEONG's instructions. The following day, LEONG caused a wire transfer of $210,245 from Bank Account-1 to Bank Account-2.

d. Based on Utah Secretary of State records, I have learned that Solar is registered to a particular address in Utah, with a particular individual ("Associate-1") listed as the registered agent. On or about December 29, 2023, LEONG sent Attorney-1 a series of screenshots which appeared to show LEONG in a groupchat with Associate-1. In these screenshots of texts between LEONG and Associate-1, Associate-1 stated, "Were you able to receive the wire confirmation?" LEONG sent the screenshots to Attorney-1 while encouraging Attorney-1 to expedite the deposit and transfer of the tax refund money; LEONG sent these text messages, including the screenshots, to Attorney-1 while LEONG was located in Illinois and Attorney-1 was located in Westchester, New York.

e. As set forth above, on December 22, 2023, Attorney-1 transferred $98,900 from Attorney-1's IOLTA Account to Bank Account-1, per LEONG's instructions. Four days later, on December 26, 2023, LEONG caused a wire transfer of $84,826 from Bank Account-1 to Bank Account-2.

**Use of Victim-3 and Victim-4 Identities in Fraud Scheme**

13. Based on my review of records from the Internal Revenue Service, my review of records produced by Telephone-1 Service Provider, my interview of Attorney-1, my review of documents provided by Attorney-1, my discussion with the Certified Public Accountants for a husband and wife ("Victim-3" and "Victim-4," respectively), my participation in this investigation, and my discussion with other law enforcement members, I have learned the following in substance and in part:

a. On or about August 8, 2023, a Form 1040 personal income tax return for tax year 2020 was jointly filed in the names of Victim-3 and Victim-4 ("Tax Filing-2").

b. Tax Filing-2 identified Victim-3 and Victim-4's home address as a particular address in Florida ("Address-2"). Tax Filing-2 did not identify any tax preparer who was involved in the preparation of Tax Filing-2.

c. Tax Filing-2 was filed through the IRS's online portal using a particular internet protocol address ("IP-2"). An actor or actors using IP-2 also filed 71 other Form 1040 personal income tax returns in the year 2023 on behalf of other individuals.

d. Based on Tax Filing-2, on or about December 8, 2023, the U.S. Department of Treasury issued a tax refund check in the amount of $1,244,674.54 to Victim-3 and Victim-4 ("Treasury Check-2") and mailed Treasury Check-2 to Address-2.

e. On or about December 26, 2023, HENRY LEONG, the defendant, told Attorney-1, in substance and in part, that LEONG had two additional clients, Victim-3 and Victim-4, who wanted to "clear" their tax refund check through Attorney-1's IOLTA Account. LEONG, using Telephone-1, thereafter texted Attorney-1, "Please see if you can help me. They already committed to FedEx you $1.2M today. Can I please have the balance of the wire so we can move on. These are good transactions and fees earned. I still owe them $$$. These are good transactions and fees earned. I still owe them $$$. Please wire to Satoshi Holdings you have on your file at [Bank-1]."

f. On or about December 28, 2023, LEONG using Telephone-1 texted Attorney-1 a shipping tracking number and photographs, stating, "Here it is. It is a good one. Please wire $77k tomorrow. Had to work over time to convince the sender. Thanks." The photographs were of a shipping label, an authorization letter purportedly from Victim-3 and Victim-4 ("Letter-2"), and what appears to be Treasury Check-2, endorsed by Victims-3 and -4 to the Attorney-1 IOLTA Account.

g. On or about December 28, 2023, LEONG, using Telephone-1, texted Attorney-1 a photograph ("Photograph-1") of what appears to be a self-portrait, commenting, "It has been very stressful. Had to see the doctor today." Based on my comparison of Photograph-1 to a photograph of LEONG from Illinois motor vehicle records, I believe that Photograph-1 in fact depicts LEONG.

h. On or about December 28, 2023, Attorney-1 received a package by mail that contained (i) Treasury Check-2, which bore a handwritten, purported endorsement from Victim-3 and Victim-4 to Attorney-1's IOLTA Account; (ii) copies of passports purportedly belonging to Victim-3 and Victim-4 ("Victim-3 False ID" and "Victim-4 False ID," respectively); and (iii) Letter-2.

i. Letter-2 was substantially similar to Letter-1 in content and appearance. Like Letter-1, Letter-2 was printed on a particular style of letterhead with partial blue and yellow edges. Letter-2 authorized Attorney-1 to represent Victim-3 and Victim-4 as their escrow attorney, to "clear" Treasury Check-2 through Attorney-1's IOLTA Account, and to await further

instruction regarding the funds. Letter-2 bore Victim-3's and Victim-4's purported signatures and the purported notarization stamp, signature, and seal of Notary-1.

j. The photograph of Victim-3 in the Victim-3 False ID was identical to the photograph of Victim-1 in the Victim-1 False ID.

k. Attorney-1 did not deposit Treasury Check-2, contrary to LEONG's instructions.

14. Based on my review of records from a Massachusetts motor vehicle database (the "MA DMV Database"), my interview of Victim-3 and Victim-4, my training and experience, and my participation in this investigation, I have learned the following in substance and in part:

a. Victim-3's photograph in the MA DMV Database does not resemble Victim-3's purported photograph in the Victim-3 False ID that HENRY LEONG, the defendant, mailed to Attorney-1.

b. Victim-4's photograph in the MA DMV Database does not resemble Victim-4's purported photograph in the Victim-4 False ID that LEONG mailed to Attorney-1.

c. Victim-3 and Victim-4 did not submit, or authorize anyone else to submit, Tax Filing-2. Victim-3 and Victim-4 did not request or receive Treasury Check-2 and were not otherwise aware of Treasury Check-2's issuance. Victim-3 and Victim-4 are not familiar with Address-2, to which Treasury Check-2 was mailed. Victim-3 and Victim-4 are not familiar with LEONG, have never knowingly communicated with LEONG, and never authorized LEONG or anyone else to take receipt of Treasury Check-2 or to otherwise control Treasury Check-2 funds.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of HENRY LEONG, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

**/s Thomas Kovacs** (By Court with Authorization)

THOMAS KOVACS
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 23rd day of April, 2024.

[signature]

THE HONORABLE SARAH L. CAVE
United States Magistrate Judge
Southern District of New York